UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

DEVIN BROSNAN,

            Plaintiffs,

v.

KEISHA LANCE BOTTOMS, *et al.*

            Defendants,

No.: 1:22-cv-02337-LMM

## PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT PAUL HOWARD'S MOTION TO DISMISS

## PRELIMINARY STATEMENT

Defendant's motion suffers from foundational flaws: its arguments are based on negative inferences, or facts contrary to those pleaded in the First Amended Complaint, and readings of cases which are at best idiosyncratic Plaintiff filed his Complaint on June 10, 2022. (ECF Doc. No. 1) (hereinafter "Complaint" or "Compl."). Defendant specifically pleaded that Howard was not acting in a prosecutorial capacity; that he acted with malice; and that his actions were those of an investigator, a self-interested politician, and an administrator. It does not appear as if Defendant assumed any of these facts were true or addressed them in

substantively in his argument. (ECF Doc. No 45) ("Defendant's Brief" or "Def. Br.") Defendant has moved to dismiss all counts against him, for failure to state a claim, in "straightforward" analysis, Def. Br. at 1, which simply ignores fact and law which might complicate it. Defendant's motion cannot carry the heavy burden required of a motion to dismiss.

## STATEMENT OF FACTS

Plaintiff filed his Complaint on June 10, 2022. (ECF Doc. No. 1) (hereinafter "Complaint" or "Compl."), alleging in pertinent part that Defendant: that Defendant was not acting as a prosecutor, Compl. at ¶¶ 14, 82, 84-86, 91, 99-101, 105, 107-108, 137, 157-160, acted outside of the scope of his normal employment, *id*. at ¶¶ 111, 98-99, 101, 112, 137, 157-160, with actual malice and malice, *id*. at ¶¶ 78, 81, 93, 93-99, 111-112, 115, 122, 132-138, 161, 167, 170, and for personal and political gain, id. at ¶¶ 79-81, 101, 105-107, 11-113, 183, 212.

Plaintiff was afforded no adequate name clearing hearing, *Id*. at ¶¶ 54-58, 63-65, 75, 82-85, 105-110, to address widely publicized stigmatizing statements made by Howard, with malice, *id.* at ¶¶ 76-104, 106-112, 115, accompanied loss of Plaintiff's property, home, and physical liberty. *See, e.g.*, *id.* at ¶¶ 120-123, 125-136, 148-151, 167, 178. Plaintiff, also was arrested without cause based on knowingly false statements. *Id.* at ¶¶ 155-175. All of these events occurred close in time and were closely interconnected.

## LEGAL STANDARDS

To survive a motion to dismiss for failure to state a claim, the complaint must give the defendant general notice under Federal Rule of Civil Procedure, Rule 8, which requires *only* "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This is a lenient standard which was adopted to simplify the pleading system; the Rule "was adopted to focus litigation on the merits of a claim" rather than on technicalities that could keep litigants out of court. *Swierkiewicz v. Sorema, N.A*., 534 U.S. 506, 513-14 (2002). Keeping in mind this leniency, states of mind, such as intent or knowledge may be pleaded generally. *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1371 (11th Cir.1997). Further, the Eleventh Circuit still accepts Rule 9(b) as written. *See U.S. ex Rel Matheny v. Medco Health Solutions, Inc.*, 671 F.3d 1217, 1224 (2012) (reversing 12(b)(6) dismissal for failure to properly apply 9(b) general allegation standards):

> At the pleading stage, "*knowledge, and other conditions of a person's mind may be alleged generally.*" Fed.R.Civ.P. 9(b). Here, Relators allege that Defendants Parazella and Dolan "willfully and knowingly devised a scheme to create false records to eliminate the cash overpayments." . . . *Under Rule 9(b)'s standards, these general allegations are sufficient.*
> *Id.* (emphasis added).

The Eleventh Circuit no longer applies any heightened pleading standard to civil rights actions. *See Hoefling v. City of Miami*, 811 F.3d 127, 1275-76 (11th Cir. 2016) (emphasis added). Moreover, federal pleading rules "do not countenance

dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." *Johnson v. City of Shelby, Miss.* 574 U.S. 10, 11 (2014) ("For clarification and to ward off further insistence on a punctiliously stated 'theory of the pleadings,' petitioners, on remand, should be accorded an opportunity to add to their complaint a citation to § 1983."). Under *Twombly*: "a well-pleaded complaint may proceed even . . . the facts alleged is improbable, . . . recovery is very remote and unlikely." *Id.* at 556 (cleaned up).  In reviewing a complaint under Rule 12(b)(6) it must be viewed in a light most favorable to plaintiff and all factual allegations are assumed true. *See Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1057 (11th Cir. 2007). Nothing is considered beyond the face of the complaint, *see Brooks*, 116 F.3d 1364, 1368 (11th Cir.1997), and the burden is upon the moving party to show *to a certainty* that the plaintiff is not entitled to relief. *Jackam v. Hosp. Corp. of Am. Mideast, Ltd*., 800 F.2d 1577, 1581 (11th Cir 1986)

> [Motion] should not be granted unless it appears to be a certainty that Plaintiff would not be entitled to recover under any state of facts which could be proved in support of his claim.

> *Id.* (citation omitted).

## ARGUMENT

## I.   DEFENDANT HOWARD WAS NOT ACTING AS A PROSECUTOR AND AS SUCH CANNOT CLAIM THE BENEFITS OF PROSECUTORIAL IMMUNITY.

At all times relevant, Defendant Howard was not acting as a prosecutor,

Compl. at ¶¶ 14, 82, 84-86, 91, 99-101, 105, 107-108, 137, 157-160,

Defendant simply ignores this statement and the many inferences that flow from it. Plaintiff believes that failure alone is fatal to Defendant's arguments and precludes entrance of a dismissal based on prosecutorial immunity. Plaintiff, however, will assume for the purposes of argument that Defendant is arguing that as a matter of law the actions which he perpetrated were prosecutorial in nature.

### A. Prosecutorial Immunity *only* attaches Where One is Acting as a Prosecutor.

Prosecutorial immunity is meant to benefit prosecutors acting as prosecutors, where there is nothing especially prosecutorial in what an actor is doing, there is simply no reason to afford absolute immunity. *See Imbler v. Pachtman*, 424 U.S. 409, 430 (1976) (leaving open the question of breadth of prosecutorial immunity); *Buckley v. Fitzsimmons*, 509 U.S. 259 (1993), (refining *Imbler* and holding prosecutor enjoys no prosecutorial immunity when conducting investigative work or making statements to media); *Van de Kamp v. Goldstein*, 555 U.S. 335 (2009) (further refining the *Imbler* analysis and focusing on required legal knowledge and nature of required system and training).

Plaintiff would note that Defendant never cites to later supreme court cases that define the question left open by *Imbler*. 424 U.S. at 430 ("We have no occasion to consider whether like or similar reasons require immunity for those aspects of the

prosecutor's responsibility that cast him in the role of an administrator or investigative officer rather than that of advocate.") Nor applies a *functional* analysis to first-instance investigation to determine probable cause or statements made to the press. *See* Def. Br. at 6-7 (noting the existence of the functional analysis but never preforming the same (citing *Rivera v. Leal*, 359 F.3d 1350, 1353 (11th Cir. 2004)).

The functional test is aptly described in *Buckley*:

> When a prosecutor performs the investigative functions normally performed by a detective or police officer, it is "neither appropriate nor justifiable that, for the same act, immunity should protect the one and not the other." *Hampton v. Chicago,* 484 F.2d 602, 608 (CA7 1973) internal quotation marks omitted), cert. denied, 415 U.S. 917, 94 S.Ct. 1414, 39 L.Ed.2d 471 (1974). Thus, if a prosecutor plans and executes a raid on a suspected weapons cache, he "has no greater claim to complete immunity than activities of police officers allegedly acting under his direction." 484 F.2d, at 608–609.

509 U.S. at 273-74.

 *Buckley* is likely not cited because its holdings are fatal to Defendant's arguments; it specifically holds: (1) "[a] prosecutor neither is, nor should consider himself to be, an advocate *before he has probable cause to have anyone arrested*[,]" 509 U.S. at 274 (2) "searching for clues and corroboration that might give them probable cause to recommend an arrest [is not prosecutorial,]" *id.* at 260; and (3) "convening a grand jury to consider the evidence their work produced does not retroactively transform that work . . . into the prosecutorial." *Id.* This case *only* involves a probable cause determination, there was no presentment to a grand jury or

initiation of actual prosecution.[1] That *alone* removes the actions from the prosecutorial scope.

If a prosecutor acts in a capacity akin to that of other officials, they will only enjoy qualified immunity the same immunity as these officials. *Ibid.* Howard in this case was performing acts normally conducted by police, not prosecutors, *i.e.*, acts where it would be neither "appropriate nor justifiable that, for the same act, immunity should protect the one and not the other." *Buckley*, 509 U.S. at 273-74.

To begin, Howard investigated a crime, not for the purposes of bringing a complaint to a grand jury or filing an information with the Court, but rather in no manner different than a law enforcement officer; literally, law enforcement officers were investigating the events and had yet to present their investigation to Howard. Even had Howard presented charges to a grand jury, he could not "retroactively transform that work . . . into the prosecutorial[.]" *Buckley*, 509 U.S. at 260. Howard, impatient and facing re-election, stepped-in to conduct his own woefully inadequate investigation. There is literally nothing pre-establishment of probable cause that is prosecutorial. *Buckley*, 509 U.S. at 274 ("A prosecutor neither is, nor should consider himself to be, an advocate *before he has probable cause to have anyone arrested*."). Next, there is the securing of an arrest warrant based on false statements

---

[1] This was impossible to plead upon filing, but subsequently a special prosecutor decided to drop the "case" without presenting it to a grand jury for indictment.

and omissions; again, an act regularly done by police and an act for which they receive qualified immunity.[2] Then there would be statements made to the press for which no immunity is enjoyed. *Van de Kamp v. Goldstein*, 555 U.S. 335, 341-42 (2009) (citing *Buckley*, 509 U.S. at 277).

Finally, glaringly absent from Defendant's argument is *Kalina*'s holding which deprives a prosecutor of prosecutorial immunity where the prosecutor acts as a complaining witness, swearing to facts set forth in a charging document. *Kalina v. Fletcher*, 522 U.S. 118, 118 (1997) (holding prosecutor "is not acting as an advocate, as where he functions as a complaining witness in presenting a judge with a complaint and supporting affidavit to establish probable cause for an arrest" even when doing so in connection with filing of information).

Here no prosecution was "initiated": there was no filing of an information or presentment to a grand jury, nor was it pleaded. *See generally* Compl.

## A. Howard Bears the Burden of Demonstrating that He is Clearly Entitled to Immunity and He has Not Carried that Burden.

---

[2] *See, e.g.*, *Kelly v. Curtis*, 21 F.3d 1544 (11th Cir. 1994) (police officer and probable cause in arrest warrant affidavit); *Garmon v. Lumpkin Cnty.*, 878 F.2d 1406, 1408 (11th Cir. 1989) (same). Indeed, the canonical cases establishing these theories of false arrest involve *police officers* making knowingly false statements. *See Franks v. Delaware*, 438 U.S. 154 (1978); *Malley v. Briggs*, 475 U.S. 335 (1986); *see also Melton v. Phillips*, 875 F.3d 256, 264 (5th Cir. 2017) (en banc) (discussing *Franks* and *Malley*, again based on equivalent actions of law enforcement officer).

The official seeking absolute immunity bears the burden of showing such immunity is justified. *Malley v. Briggs*, 475 U.S. 335, 340 (1986); *Buckley*, 509 U.S. at 269. In the instant case, Defendant and actors under his supervision were not acting in a prosecutorial capacity. *Buckley*, 509 U.S. at 273-74 (probable cause investigation non-prosecutorial); *Jones v. Cannon*, 174 F.3d 1271, 1284-85; *Van de Kamp*, 555 U.S. at 341-42 (press conferences non-prosecutoral). Further *all acts* were taken before probable cause was established, prior to anyone having a role as state's advocate. *Buckley*, 509 U.S. at 274  ("[a] prosecutor neither is, nor should consider himself to be, an advocate *before he has probable cause to have anyone arrested*") (emphasis added).The injuries arose from: investigation, the issuance of a warrant, and public pronouncements, all of which fall outside of the traditional ambit of absolute immunity*, see Van de Kamp*, 555 U.S. at 341-42. Howard chose to usurp the GBI's traditional role—presumably, the length of time required to conduct an adequate investigation would have prevented Mr. Howard from profiting from promoting himself as being "tough on police" a stance he found politically advantageous—and therefore he can only hope to be afforded qualified immunity. *Id.*; *See also* Compl. at ¶¶ 77-84, 90-93.

## II.   DEFENDANT'S ARGUMENT CONFUSES LEGALLY DISTINCT CONCEPTS.

 For the sake of brevity Plaintiff would only note that a cause of action under § 1983 for false arrest is of course going to be based on the seizure of one's person.

Plaintiff does not believe that Howard seriously is contending that he did not intend the seizure of Plaintiff by securing an arrest warrant naming Plaintiff as the person to be arrested.

Defendant Howard's argument, as it relates to *property*, relies on a very curious reading of *Brower* and an unusual application of the same to non-person property. *See* Def. Br. at 11 (citing *Corbitt v. Vickers*, 929 F.3d 1304, 1317 (11th Cir. 2019) (dealing with seizures of persons) (citing *Brower v. City of Inyo*, 489 U.S. 593, 597 (1989) (dealing with seizures of persons)). Indeed, the entire argument is based upon the language: "seizure occurs even when *person or thing* is the object of the detention or taking, but the detention or taking itself must be willful." *Brower v. City of Inyo*, 489 U.S. 593, 596 (1989). (emphasis added). The ultimate holding of *Brower* despite the "person or thing language" is:

> In determining whether the means that terminates the freedom of movement is the very means that the government intended we cannot draw too fine a line, or we will be driven to saying that one is not seized who has been stopped by the accidental discharge of a gun with which he was meant only to be bludgeoned, or by a bullet in the heart that was meant only for the leg. We think it enough for a seizure that a person be stopped by the very instrumentality set in motion or put in place in order to achieve that result. It was enough here, therefore, that, according to the allegations of the complaint, Brower was meant to be stopped by the physical obstacle of the roadblock—and that he was so stopped.

*Brower* is often cited in cases arising from seizures of a person where the conduct which seizes a person is aimed at another individual. *See Corbitt* 929 F.3d

1304, 1319 (collecting various cases where actions are aimed at one person and injure third party). Indeed, *Bower* and *Corbitt* apparently ask, was the force which caused the injury directed at the party bringing suit—if yes, then liability attaches; if no, it doesn't—each deals with a seizure of person and not property. Further, *Corbitt*, pointedly noted that the language, quoted above, was *dicta* even as it related to seizures of a person. *See id.*

    *Brower*, involved a road-block set up to force plaintiff to cease fleeing on a highway; the plaintiff ultimately crashed into the roadblock and died. *Brower*, 489 U.S. at 596.  The Court held because the roadblock was meant to "physically stop [plaintiff,]" even though it was not intended to cause his death, and his Fourth Amendment claim was sufficiently alleged. *Id.* at 598-600. The dispositive question was whether the actions were directed towards the ultimately injured Plaintiff. *Ibid. Corbitt* involved the attempted shooting of a dog and striking of a third-party by Defendant. *Corbitt*, 929 F.3d at 1308.

    It involves rather drastic expansions of these cases to bring them out of the injury-to-person seizure claim and state that they *carte blanche* apply across all the many seizures of property, *see Katz v. U.S.*, 389 U.S. 347, 353 (1967) (noting breadth of seizure claims).

    Finally, the recent holdings in *Nieves v. Bartlett* and *Torres v. Madrid,* both notably absent from Defendant's brief, make clear that the existence of a seizure has

nothing to do with whether or not the person seized is aware of it or whether the seizure actually occurs. *Compare* Def. Br. at 11 (requiring acquisition and physical control), *with Torres v. Madrid*, 141 S.Ct. 989, 998 (2021) (holding "the appropriate inquiry is whether the challenged conduct *objectively* manifests an intent to restrain" and finding "seizure" where plaintiff successfully fled officers control) (emphasis original) (citing *Nieves v. Bartlett*, 587 U.S. ____, 139 S.Ct. 1715, 1724-25 (2019)). These cases make clear that there need not be any acquisition or control at all: "that the application of force gives rise to an arrest, even if the officer does not secure control over the arrestee . . ." *Torres*, 141 S.Ct. at 998 (holding common law mere or slightest touch rule applies: "[s]tated simply, the cases "abundantly shew that the slightest touch [was] an arrest in point of law.") (quoting *Nicholl*, 2 Y. & J., at 404, 148 Eng. Rep., at 976)).

### B. Defendant Completely Fails to Look at Cases Involving Seizures of Property Under the Fourth Amendment.

The Fourth Amendment applies to both seizures of persons and to seizures of property. *Payton v. New York,* 445 U.S. 573, 585, (1980); however, caselaw has developed which specifically addresses the "seizure" of property which occurs when a state agent *meaningfully interferes with a private citizen's possessory interest in that property*, *United States v. Jacobsen,* 466 U.S. 109, 113 (1984), and seizures of one's person by which occurs where by means of intentional physical force or a show of authority, *literally a mere touch*, a person's liberty is restrained. *See Torres*,

141 S.Ct. at 998 (discussing the mere touch rule and holding the "application of physical force to the body of a person with intent to restrain is a seizure even if the person does not submit and is not subdued.").

In neither scenario does the government need to acquire, control, or actually take hold of. *See id.* (discussing constructive detention where an arrest and control is never affected, but where a seizure has occurred). Any meaningful interreference with property will be a seizure of property regardless of whether or not one continues to own the property. *See Soldal v. Cook Cnty., Ill.*, 506 U.S. 56 (1992) (unreasonable seizure of property where law enforcement watched as mobile home was detached from utilities and towed away to neighboring property prior to issuance of eviction warrant). There is no requirement for acquisition or control.

In *Sodal*, property never changed hands, nor did the government take anything, nor was there acquisition of any property, nor was there any loss of property: what had occurred was a meaningful interference with property, namely a mobile home was physically moved from a lot to a neighboring property—the government did not affect this, but stood-by and assured that the owner of the trailer park could physically remove plaintiffs property absent intervention by plaintiff. *Id.* It was this complicit interreference that constituted a seizure.

Plaintiff has diligently searched for a case which has a *Brower-like* requirement for actions aimed directly at the plaintiff-owner's property and can find

none. It does not appear as if any defendant has made this argument with regard to a property-based Fourth Amendment claim—Plaintiff could find no caselaw demonstrating any such requirement and doubts it would make sense with "significant interference": for instance where the government builds a dam and floods your home, its intention was not to submerge your home, but your property has certainly been significantly interfered with and your home is underwater.

First, there are lines of cases which simply do not involve known owners or involve questions of abandonment of property. *See, e.g.*, *Pottinger v. City of Miami*, 810 F.Supp. 1551, 1570-73 (S.D. Fla. 1992); *Lavan v. City of Los Angeles*, 693 F.3d 1022, 1027-31 (9th Cir. 2012). In these cases it is never the subjective intent of the defendants which is at all important, or whether the interference with property was aimed at a particular owner or a particular piece of property, but rather whether or not the plaintiff had adequate possessory interest in the property to bring the claim. *Id.* The second longer line of cases involves, again an objective question, of whether or not the destruction of certain property was reasonable given the circumstances. *See, e.g.*, *U.S. v. Ramirez*, 523 U.S. 65, 71 (1998) ("The general touchstone of reasonableness which governs Fourth Amendment analysis, governs the method of execution of the warrant. Excessive or unnecessary destruction of property in the course of a search may violate the Fourth Amendment, even though the entry itself is lawful and the fruits of the search are not subject to suppression.") (citation

omitted); *Simmons v. City of Orlando*, (M.D. Fla. Sept. 15, 2017) (collecting cases and discussing reasonableness standard).

The test in these cases is one Howard does not apply, *i.e.*, whether the interference with property or seizure is objectively reasonable given the circumstances. In essence it is a sliding scale of legitimate government necessity weighed against the level of interreference.

Howard does not argue that the instant seizure was a *de minimus* seizure; nor that it was a temporary seizure of so short as to not matter, but rather that he lacked the requisite intent to deprive Plaintiff of his property—not a required element—and that he did not intend to cause the loss—again not a relevant inquiry. *See* Def. Br. at 11-12.

> The protection afforded by the Fourth Amendment extends to an individual's possessory interests in property, even if his expectation of privacy in that property has been completely extinguished and no search within the meaning of the Amendment has taken place. *Soldal,* 506 U.S. at 62–63, 68, 113 S.Ct. 538; *United States v. Jacobsen,* 466 U.S. 109, 113, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984); *United States v. Paige,* 136 F.3d 1012, 1021 (5th Cir.1998). Subject only to a few specifically established exceptions not applicable here, seizures conducted outside the judicial process, without prior approval by a judge or magistrate, based on probable cause, *are per se unreasonable under the Fourth Amendment. Minnesota v. Dickerson,* 508 U.S. 366, 372, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993); *Paige,* 136 F.3d at 1021.
>
> *Freeman v. City of Dallas*, 186 F.3d 601, 605 (5th Cir. 1999).

## C. Seizures Can Certainly be Effected by Private Individuals.

Where a private-party seizure occurs with participation, knowledge,

acquiescence, or encouragement of a government actor, certainly there has been a violation of the Fourth Amendment. *Cf. see United States v. Ford*, 765 F.2d 1088 1090 (11th Cir.1985) (holding that the district court properly denied motion to suppress where there was no evidence that the government "had any pre-knowledge of the search [or] that the agents openly encouraged or cooperated in the search"); *Charles v. Johnson*, No. 2:18-CV-00101-RWS-JCF, 2020 WL 12698693, at *12 (N.D.Ga. Apr. 28, 2020) (analyzing private-party actor question in 1983 action).

In Charles, the Court was analyzing a slightly different question, whether a private party could be liable under 1983—the determination of whether that party was significantly clothed under color of law to be viewed as a state actor. Although no private party has been sued here, Plaintiff believes that  the "instigation-orchestration, or encouragement" test should be applied here. *See id.* at *12.

> In determining whether a private citizen acted as a government agent, the Eleventh Circuit examines (1) whether the government knew of and acquiesced in the intrusive conduct, and (2) whether the private actor's purpose was to assist law enforcement efforts rather than to further his own ends." Id. The "knowledge and acquiescence" criteria "encompass the requirement that the government agent must also affirmatively encourage, initiate or instigate the private action. Ultimately, the government must instigate, orchestrate, or encourage the private search or seizure to trigger the application of the Fourth Amendment.

> *Id.* (internal citations and quotation marks omitted).

Here, given the totality of the circumstances one could certainly Howard's actions and comments as encouragement to violate the Fourth Amendment—

Plaintiff would note that he literally may have been murdered by a mob of people had he not fled. Howard was aware of the unrest, anger, and potential for violence: in spite of this he focused that violent rage on a particular individual, who could be easily found and legitimized the outrage—*he stated that there was a murder, there was wrongdoing, this was a moral outrage and a crime*. Howard's statements caused the loss of property and that was a foreseeable and naturally consequence of the act. *See CSX Tranp., Inc. v. McBride*, 564 U.S. 685, 701-02 (noting difficulty of defining causation and "natural, probable, and foreseeable" formulation). Plaintiff can see no world in which the result would not be "*plainly obvious*" that the injury would result from her conduct. *McDowell v. Brown*, 392 F.3d 1283, 1292 (11th Cir. 2004). The final question is whether or not this was "significant interference" under *Jacobsen*. 466 U.S. 109.

It is clear any meaningful interference with property will be a seizure regardless of whether one continues to own the property. *Soldal*, 506 U.S. 56 (unreasonable seizure of property where law enforcement watched as mobile home was detached from utilities and towed away to neighboring property prior to issuance of eviction warrant). There is no requirement for actual loss of property, nor any government take part in the interference taking; in *Soldal* the damage was namely a mobile home being physically moved from a lot to a neighboring property—notably, in *Soldal* the government did not effect this, but stood-by and assured that the owner

of the trailer park could physically remove plaintiffs property absent intervention by plaintiff. *See generally id.* It was this complicit interreference constituted a seizure under Fourth amendment. *Id.* Here the interreference experienced was at least as severe as that experienced in *Soldal.*

## III.   DEFENDANTS ARGUMENT REGARDING STATUTE OF LIMITATIONS IS SIMPLY MISTAKEN.

The statute of limitations for a reputational liberty claim is two years—just like every other section § 1983 claim. *See Jones v. Preuit & Maudlin*, 876 F.2d 1480, 1483 (stating purpose of caselaw is to "establish a uniform limitations period for actions brought under 1983 in a particular state"); *Richards v. Cobb Cnty Ga.*, 487 Fed.Appx. 556 (11th Cir 2012) (applying two-year statute of limitations to stigma plus claim). Defendant in essence argues for different 1983 actions to have different statutes of limitations within a particular state a proposition squarely rejected by the Eleventh Circuit in *Jones*, 876 F.2d at 1483.

## IV.   DEFENDANT CANNOT CHOOSE PREFERRED AVENUE OF LIABILITY

Plaintiff wishes to make this painfully clear: termination from his employment is related to the "stigma" but *not* the plus factor. A stigma-plus claim involves a stigmatizing statement made in relation to a loss of a more concrete liberty or property interest. The standard claim is stigma plus termination from government employment, *see, e.g.*, *Marrero v. City of Hialeah*, 625 F.2d 499, 519 (5th Cir. 1980)

(recognizing termination is typical, but noting any other right might serve as plus factor), but any other liberty interest will serve as a "plus." *Id.* Plaintiff lost his home, his possessions, and his personal liberty, *i.e.*, he was arrested. This was done close in time to the stigmatizing statements and certainly would have been perceived as having significant connection to them:

> Hence, it is now apparent that the defamatory communication need not cause the loss of the protected right, or more tangible interest, in order to satisfy the stigma-plus requirement of Paul. *Instead, it is sufficient that the defamation occur in connection with, and be reasonably related to, the alteration of the right or interest.* . . .  the fact that the public perceived the defamatory charges to be connected to the discharge was sufficient to give rise to a liberty interest. . . ***Similarly, here the defamation did not cause the violation of appellants' fourth amendment rights; however, the public surely perceived the defamatory statements made by the police and Rashkind to be connected to the arrests and search and seizure.***

*Id.* at 518-19.

*Marrero* makes painfully clear that a Fourth Amendment violation can be used as a plus and that there need not be direct causation, but perceived connection. *Id*. Additionally, like raising a family in the manner one wishes, marrying who one wants, having a home is one of those pursuits which is considered a quintessential liberty interest.[3] *See United States v. James Daniel Good Real Prop*., 510 U.S. 43,

----

[3] The Supreme Court "has not attempted to define with exactness the liberty . . . guaranteed[,]" *Meyer v. Nebraska*, 262 U.S. 390, 399 (1923), "it [certainly] denotes not merely freedom from bodily restraint but also the right of the

53–54 (1993) (concluding that the right to maintain control over one's home is "a private interest of historic and continuing importance"); *accord United States v. All Assets of Statewide Auto Parts, Inc*., 971 F.2d 896, 902 (2d Cir.1992) (noting, under the Mathews test, that the interest in one's home "merits special constitutional protection"); *United States v. 141st Street Corp. by Hersh*, 911 F.2d 870, 875 (2d Cir.1990) (observing that the home occupies a privileged place in the eyes of the law). The point being, that there was a "plus," whether that be the home, the arrest, the loss of property, *etc.*, and there was also a "stigma" as discussed at length below. The loss of a job—while certainly adding insult to injury—is ancillary to the stigma-plus claim. The focus on temporary termination which makes much of their arguments simply off point. *See generally* Def. Br at 14-17 (focusing on the loss of employment and due process instead of due process relating to reputation/name).

## A. Post-Deprivation Name Clearing Hearings and *Matthews*.

---

individual to contract, to engage in any of the common occupations of life, to acquire useful knowledge, to marry, *establish a home* and bring up children . . . and generally to enjoy those privileges long recognized at common law as essential to the orderly pursuit of happiness by free men." Id. (collecting cases). *See also Bridges v. Wixon*, 326 U.S. 135, 154 (1945) (recognizing in cases of involuntary geographic removal, "the liberty of an individual . . . at stake" because "[it] deprives him of the right to stay and live and work in [his home]); *Am.-Arab Anti-Discrimination Comm. v. Reno*, 70 F.3d 1045, 1068–69 (9th Cir. 1995) ("[Residents] . . . have a strong liberty interest in remaining in their homes.").

The barring of due process claims due to post-deprivation remedies is appropriate *only* where an intentional acts are not in accordance with policy. *See Hudson v. Palmer*, 468 U.S. 517, 532 (1984) ("postdeprivation remedies do not satisfy due process where a predeprivation of property is caused by conduct pursuant to established state procedure") (citing *Logan v. Zimmerman Brush*, Co., 455 U.S. 422 (1982)). "[A]t least in those areas in which he, alone, is the final authority or ultimate repository of county power, his official conduct and decisions must necessarily be considered those of one whose edicts or acts may fairly be said *to represent official policy* for which the county may be held responsible under section 1983." *Familias Unidas v. Briscoe*, 619 F.2d 391, 404 (5th Cir.1980).

> Where a municipal officer operates pursuant to a local custom or procedure, the *Parratt/Hudson* doctrine is inapposite: actions in accordance with an "official policy" under *Monell* can hardly be labeled "random and unauthorized." As this Court noted, *where employees are acting in accord with customary procedures, the "random and unauthorized" element required for the application of the Parratt/Hudson doctrine is simply not met*.

 *Woodard v. Andrus*, 419 F.3d 348, 353 (2005) (citing *Brooks v. George Cnty., Miss.*, 84 F.3d 157, 165 (5th Cir. 1996)).

Howard functioned as a final policy maker in regards to statements made to the press—there was no one to review these statements and no one who could limit his policy vis-à-vis press statements. Those statements made to the press coupled

with various "plus" losses caused the injury here, *i.e*, no post-deprivation hearing could undo the harm.

A reputational liberty claim is primarily concerned with reputational loss—it is for this reason that there must be an *adequate name-clearing hearing*:

> "Because [the hearing] is provided simply to cleanse the reputation of the claimant, the hearing need not take place prior to his termination or to the publication of related information adverse to his interests." *Campbell v. Pierce Cnty*., 741 F.2d 1342, 1345 (11th Cir. 1984). *This is so because the hearing is "not to avert the unjustified denial of a specific benefit, but to allow the aggrieved party to 'clear his name.'"* I*d.* (citing *Codd*, 429 U.S. at 627, 97 S. Ct. at 884. Thus, in Johnston's situation, the *hearing would not be for the purpose of saving her job; rather, it would be convened for the sole purpose of clearing her name*.

*Johnston v. Borders*, 36 F.4th 1254 (11th Cir. 2022). (emphasis added).

## V.    <u>DEFENDANT FAILS TO DEMONSTRATE ADEQUACY.</u>

Here, Plaintiff was afforded no adequate name-clearing hearing; this was especially true considering the wide publication of the stigmatizing statements. There are very few cases that involve the adequacy of hearings as they relate to remedy for press releases.

While, again, there exists little caselaw within-circuit, almost every case which involves statements to the press, reputational claims survived and argument was not made as to sufficiency of post-deprivation remedy.[4]

---

[4] *See Cohen v. McGuire*, No. 3:15-cv-133-J-34JRK, 2016 WL 3188889 (M.D. Fla.

These are bolstered by the first holding in *Johnston v. Borders*—an opinion which directly touches upon deprivation of procedural due process and the intersection of post-deprivation relief—there the Eleventh Circuit held that mandamus would be inadequate to clear the plaintiff's name. 724 F. App'x 762, 768 (11th Cir. 2018) (per curiam). A subsequent appeal clarified that earlier was based on the parties' briefing, specifically that the plaintiff contended that mandamus relief would be insufficient to remedy the plaintiff's claimed lack of notice and provide adequate chance to clear plaintiff's name. *Johnston v. Borders*, 36 F.4th 1254, 1266 (11th Cir. 2022). Here to be clear, the Plaintiffs are contending that the state-remedies are simply inadequate to undo the harm wrought by the stigmatizing statements publicized world-wide. While the second holding in *Johnston* emphasized it was "non-precedential" and that there was the potential for mandamus to provide adequate remedy, there is nothing in the opinion that would lead one to believe that

---

Jun. 8, 2016) (denying summary judgment where statements made to press); *Rehberg v. Paulk*, No. 1:07–CV–22 (WLS), 2009 WL 7772286 (Mar. 31, 2009) (denying summary judgment where statements made to press); *Military Circle Pet Ctr. No 94, Inc. v. Cobb Cnty., Ga.*, 665 F.Supp. 909, 916 (N.D.Ga. 1987) (rejecting post-deprivation argument where statements made to press); *Little v. City of North Miami*, 805 F.2d 962 (11th Cir. 1986) (claim stated where resolution passed defaming plaintiff); *but see Hayden v. Ala. Dep't. of Public Safety*, 506 F.Supp.2d 944, 955 (M.D. Ala. 2007) (upholding motion to dismiss where plaintiff failed to argue he was denied opportunity to refute the validity of stigmatizing charges).

post-deprivation relief *per se* provides an adequate name clearing remedy where there is wide public dissemination of the stigmatizing statement and that such is a matter of established law. *Id.* at 1266 n.18.

Further, Plaintiff would urge this Court to apply the logic of other federal courts which have developed a sensible model for determining adequacy, *i.e.*, a proportional publicity requirement. *See Ganasekera v. Irwin*, 551 F.3d 461, 470-71 (6th Cir. 2009) (applying *Mathews v. Eldridge* balancing test and requiring publicity commensurate with the publicity of the stigma).

> In order to satisfy due process, the university is required to offer Gunasekera a name-clearing hearing *that is adequately publicized to address the stigma the university inflicted on him.* The exact nature of that publicity depends on a fact-intensive review of the circumstances attending his case, and we leave to the district court the initial determination regarding the exact parameters of the name-clearing hearing due to Gunasekera.

> *Id.* at 471.

The Defendant summarily states that the hearings available relating to termination were adequate absent analysis or justification. Clearly this is a factual question which would preclude even a motion on summary judgment, *Clemons v. Dougherty Cnty. Ga.*, 684 F.2d 1365, 1374-75 (holding factual issues on procedural adequacy barred summary judgment), and certainly given the legal standards on a motion to dismiss, dismissal here would be improper. If Defendant wished to demonstrate as a matter of law that the hearing afforded was adequate, he would have

*had* to undertake a due process analysis under *Mathews v. Eldridge*, which he has not.

## VI.   DEFENDANT'S ARGUMENT REGARDING FALSE ARREST IS LITERALLY AN ARGUMENT OVER SEMANTICS.

First, actions based on §1983 are not state-law torts; while often those torts are used as useful proxies, whether or not a certain seizure constitutes a tort in a particular state has nothing to do with whether or not the act deprives a party of a right secured by the Constitution. *Wallace v. Kato*, 549 U.S. 384, 387-88 (2007). The Defendant cites to a case that references this very principle. *See* Def. Br. at 19 (citing *Wallace*, 549 U.S. at 387-88 (noting federal law always resolves questions involving § 1983 though state law analogies may be helpful)).

To move forward, *Wallace v. Kato* actually holds that a 1983 action based on false arrest accrues at the time of detention; it is a statute of limitations case which states that a false imprisonment or false arrest claim accrues once the tort is complete, *i.e.*, upon seizure, and ends when the process of arraignment begins. *Id.* at 390. To the extent that the Defendant would prefer the claim be titled differently, Plaintiff would note how very common it is to title actions based on false or omitted facts leading to the issuance of a warrant and a subsequent arrest as "false arrest." *See, e.g.*, *Wilson v. Stroman*, 33 F.4th 202, 206 (5th Cir. 2022) (false arrest based on false statements presented in affidavit supporting issuance of warrant). It does not change that these cases are simply unlawful seizures under the Fourth Amendment, but it is

common practice to title them as their 1983 state law equivalents.

These cases are often based on *Malley v. Briggs*, 475 U.S. 335 (1986), where the officer presents clearly inadequate evidence to support the issuance of an arrest warrant, or *Franks v. Delaware*, 438 U.S. 154 (1978), where false statements or omissions lead to the issuance of an arrest warrant. Specifically, an officer is liable under *Franks* if he "deliberately or recklessly provides false, material information for use in an affidavit in support of [a warrant]" or "makes knowing and intentional omissions that result in a warrant being issued without probable cause" *Melton v. Phillips*, 875 F.3d 256, 264 (5th Cir. 2017) (en banc).

*Jones v. Cannon* makes rather clear that a false arrest claim can be based on false statements:

> Furthermore, the law was clearly established in 1993 that the Constitution prohibits a police officer from knowingly making false statements in an arrest affidavit about the probable cause for an arrest in order to detain a citizen and, thus, that qualified immunity will not shield Detective Powers from liability for such false statements, if such false statements were necessary to the probable cause. Malley v. Briggs, 475 U.S. 335, 344–45, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986); Whiting v. Traylor, 85 F.3d 581, 585 n. 5 (11th Cir.1996); Kelly v. Curtis, 21 F.3d 1544 (11th Cir.1994) (following Malley and holding police officer not entitled to qualified immunity in § 1983 claim based on officer's false statements in 1989 affidavit submitted to magistrate judge for arrest warrant at warrant hearing); United States v. Martin, 615 F.2d 318, 327–29 (5th Cir.1980) (applying rule regarding false statements in a search warrant in Franks v. Delaware, 438 U.S. 154, 156, 165–71, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), to perjurious statements used to obtain an arrest warrant).

174 F.3d 1271, 1285 (1999).

In the end of the day, however, it is of no real moment. *Johnson.* 574 U.S. at 11; ("For clarification and to ward off further insistence on a punctiliously stated 'theory of the pleadings,' petitioners, on remand, should be accorded an opportunity to add to their complaint a citation to § 1983.") (citing 5 Wright & Miller, Federal Practice and Procedure § 1219, pp. 277-78 ("The federal rules effectively abolish the restrictive theory of the pleadings doctrine, making it clear that it is unnecessary to set out a legal theory for the plaintiff's claim for relief."))

In short, false statements, and material omissions, were knowingly made to have an arrest warrant issued where there existed no probable cause and Plaintiff was arrested; this states a claim for false arrest under section 1983 or an unlawful seizure claim under section 1983. *See Jones* 174 F.3d at 1285.

**VII.   Defendant Presents No Reason to Dismiss Conspiracy Claims.**

Defendant's entire argument as it relates to the section 1983 conspiracy boils down to prosecutorial immunity being owed him in his decisions to initiate a prosecution. Def. Br. at 20-22. The issue here, discussed at length above, is that it is not the initiation of a prosecution which caused the deprivation. *See supra* Section I. Indeed, there was never presentment to a grand jury and no ultimate prosecution. *See* Compl. at ¶ 105. What occurred was statements made to the press, false statements made in arrest warrants, and constitutionally inadequate investigations leading to an arrest, *etc.* Compl. at ¶¶ 77-115. These acts all are far removed from the judicial

process and typically the acts of an executive official—in short no prosecutorial

immunity is available and Defendant certainly has not established his entitlement to

such conclusively as a matter of law.

### A. Defendant Fails to Fully Explore the Very Cases He Cites.

To begin, Defendant cites to *Girder*, *Dickerson*, *see* Def. Br. at 21; He neither

explains at length nor explores the holdings and the exceptions to the doctrine. *Id.* at

21. Such is quite consequential considering the pleading and the holdings in both

*Girder* and *Dickerson*. *See Dickerson v. Alachua Cty. Comm'n,* 200 F.3d 761, 768

(11th Cir. 2000); *Grider v. City of Auburn*, 618 F.3d 1240, 1262 (11th Cir. 2016).[5]

> The only remaining question is whether there are any exceptions to this
> doctrine. In *Dickerson*, we observed that other circuits, while applying
> the intracorporate conspiracy doctrine in § 1985 civil rights cases, have
> recognized exceptions (1) for "convictions involving criminal charges
> of conspiracy," (2) where *the employee has an "independent personal
> stake"* in his unconstitutional acts and is not acting to further the
> corporation's illegal objective, or (3) where the employees "engage in a
> series of discriminatory acts as opposed to a single action" over a
> significant period of time in the employment setting. *Dickerson*, 200
> F.3d at 768–70 & n. 9 (collecting and discussing cases from other
> circuits).

*Girder*, 618 F.3d at 1262 (emphasis added).

It is puzzling that Defendant chose to not address this portion of the caselaw.

Naturally, here you have accusations of Defendant acting to further his *personal*

---

[5] These exceptions are laid out literally one page after the page Defendant cites to.

interests, for his *personal* gain, acting in his *individual capacity*, outside his duties as prosecutor. *See* Compl. at ¶¶ 79-81, 101, 105-107, 11-113, 183, 212. In other words, Defendant has an "independent personal stake" and he cannot attempt to avoid liability through the intracorporate conspiracy doctrine. This very Court, citing to *Girder*, has found that an independent personal stake exists where an official acts on self-interest to further or preserve a career. *See Williams v. Fulton Cnty. Sch. Dist.*, 181 F.Supp.3d 1089, 1147 (N.D.Ga. 2016) ("it is inappropriate to dismiss a complaint that pleads significant factual material that supports the plausible inference that school officials may have covered up reports of abuse in order to *save their own careers*."). Defendant here undertook unconstitutional acts to *further his own career:* The doctrine is therefore not applicable. For the same reasons—*i.e.*, the clear benefits to Howard, Defendant's ratification argument will fail.

## B. Defendant's Argument Could Only Be Accepted by Ignoring Law and Fact.

There are simply ample facts to demonstrate an agreement and conspiracy. *See, e.g.*, *McIntee v. Deramus*, 313 Ga.App. 653, 656 (2012) (holding conspiracy can be established where "two or more persons *in any manner, either positively or tacitly*, arrive at a mutual understanding . . .") (emphasis added).

> The law recognizes the intrinsic difficulty of proving a conspiracy. The conspiracy *may sometimes be inferred from the nature of the acts done, the relation of the parties, the interests of the alleged conspirators, and other circumstances.* To show conspiracy*, it is not necessary to prove*

*an express compact or agreement to the parties thereto.* The essential element of the charge is the common design; but it need not appear that the parties met together either formally or informally, or entered into any explicit or formal agreement; nor is it essential that it should appear that either by words or by writings they formulated their unlawful objects. It is sufficient that two or more persons in any manner either positively or tacitly come to a mutual understanding that they will accomplish the unlawful design.

*Nottingham v. Wrigley*, 221 Ga. 386, 389 (1965) (emphasis added; cleaned up; citations omitted).

Where one is to infer the existence of an agreement, which is most often the case, "[b]ecause civil conspiracy is by its very nature a secret endeavor" very seldom is it appropriate to enter summary judgment or a motion to dismiss. *Cf. Traub v. Washington*, 264 Ga.App 541, 546 (2003) (noting the highly fact specific inferences are best left to jury).

Defendant, literally, broadcasted that he was involved in an agreement to obtain arrest warrants without cause and there are more than enough facts to assume that there existed an agreement to deprive Plaintiffs of their constitutionally protected rights. *See* Compl. at 120-123, 125-136, 148-151, 167, 178.

**VIII.  DEFENDANT IMPROPERLY SHIFTS THE BURDEN OF QUALIFIED IMMUNITY ANALYSIS TO THE PLAINTIFFS ABSENT EXPLANATION OR DEVELOPMENT.**

Defendant fails to demonstrate he was acting within the scope of his discretionary duties and therefore shifts no burden to Plaintiffs. *See* Def. Br. At 13-14; *see also Habert Intern., Inc. v. James*, 157 F.3d 1271, 1281 (11th Cir. 1998) ("We

apply a two-part analysis to a government official's assertion of qualified immunity. *First, the official must prove that the allegedly unconstitutional conduct occurred while he was acting within the scope of his discretionary authority.* [Citation.] Second, *if the official meets that burden*, the plaintiff must prove that the official's conduct violated clearly established law.) (citing *Evans v. Hightower*, 117 F.3d 1318, 1320 (11th Cir.1997)) (emphasis added).

Defendant has pointed to no facts within which demonstrate conclusively that Defendant he was acting within the scope of their duties. Nor, has Defendant pointed to any caselaw conclusively holding he was acting within his discretionary authority. Nor any statutory law demonstrating that the actions fell within his discretionary purview. His motion, therefore, must fail. *See Jackam*, 800 F.2d at 1581 (requiring legal demonstration to a certainty that claim lacks merit to meet burden on a motion to dismiss).

## A. **Even Had Defendant Shifted the Burden, the Actions Still Would Be Contrary to Clearly Established Law.**

In order for the motion to dismiss on qualified immunity to be successful, the affirmative defense must be sufficiently demonstrated on the face of the complaint, constituted by the facts contained in the complaint; this is simply not the case here and Defendants cite no facts within the FAC demonstrating the clear existence or availability of qualified immunity. *See Powell v. Ga. Dep't of Human Resources*, 114 F.3d 1074, 1077 (11th Cir.1997) (noting qualified immunity must be determined

"under the most favorable version of the facts alleged"); *Fortner v. Thomas*, 983 F.2d 1024, 1028 (11th Cir.1993) (same).

To the extent that Defendant argues that a unique set of circumstances or the "unheard of nature" of his actions would insulate him from liability, Plaintiff would point to recent caselaw dealing with emergency or mass protests.[6] Caselaw from outside this Circuit makes clear the violation matters not external circumstances. *See, e.g.*, *Senn v. Smith*,  No. 21-35293, 2022 WL 822198 (no qualified immunity despite protest for excessive force due process claim); *Molina v. City of St. Louis*, No. 4:17-CV-2498-AGF, 2021 WL 1222432 (E.D. Mo. Mar. 31, 2021);   *Quraishi v. St. Charles County, Mo*., 4:16-CV-1320 NAB, 2019 WL 2423321, at *7 (E.D. Mo. June 10, 2019), *aff'd in part, rev'd in part and remanded*, 986 F.3d 831 (8th Cir. 2021) (rejecting qualified immunity in Black Lives Matter protest environment); . *Lamb v. City of Decatur*, (N.D. Ill. 1996) (holding qualified immunity could not attach in protest setting as it related to excessive force and free speech); *see also* Karen J. Pita

---

[6] States of emergency are by their nature unusual, were there a requirement that clear constitutional torts could only give rise to liability where liability had been found in similar states of emergency it would in effect abrogate liability entirely where a state of emergency had been declared. It is presumably for this reason that courts regularly look to the constituent acts of the tort rather than the external situation. *See Qurasaishi v. St. Charles Cnty.*, *Mo.*, 986 F.3d 831, 837-39 (8th Cir. 2021) (analyzing underlying torts, arrest without probable cause and first amendment retaliation, rather than the unusual unrest created by protests in Ferguson, Mo.)

Loor, *When Protest Is the Disaster: Constitutional Implications of State and Local Emergency Power*, 43 Seattle U. L. Rev. 1, 65 (2019) (discussing topic at length).

The question is not whether or not there is established caselaw directly addressing the "circumstances," but rather whether right alleged violated, was clearly established. *See Ashcroft v. al-Kidd* U.S. 731, 741, (2011) (While there need not be "a case directly on point, [ ] existing precedent must have placed . . . *constitutional question beyond debate*."). In other words, qualified immunity is not available where a right is "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 639 (1987).

Defendant simply does not analyze the contours of the rights alleged to be violated and Plaintiffs certainly believe these rights to have been concretely established by the time of the violations occurred.

The Plaintiff pleaded a substantial interference with property, *Jacobsen*, 466 U.S. 109; *Soldal*, 506 U.S. 56; a false arrest, *Jones*, 174 F.3d 1271; and a stigma plus claim accompanying a false arrest, *Marrero*, 625 F.2d 499.

Qualified Immunity is not available where there is clearly established law putting the giving the Defendant "fair warning." *See Mikko v. City of Atlanta*, 857 F.3d 1136, 1146 (11th Cir. 2017). The Defendant here had fair warning of each claim above and the "stigma-plus." *See Johnston v. Borders*, 724 Fed.Appx. 762 (holding no qualified immunity available where termination coupled with press releases

without adequate opportunity to clear name, in spite of availability of post-deprivation hearing) (citing *Cotton v. Jackson*, 216 F.3d 1328, 1330 (11th Cir. 2000); *Buxton v. Cty. of Plant Cty., Fla.*, 871 F.2d 1037, 1038, 1045-46 (11th Cir. 1989)); *See also Johnston v. Borders*, 36 F.4th 1254, 1266 (11th Cir. 2022) (holding law clearly established for similar claim accruing in 2014).

To the extent Defendant wishes to state that he did not cause the termination and did not employ defendant*, etc.*, *see* Def. Br. at 11-12 (noting post-deprivation remedy and employment). This argument has been made and rejected, in *Marrero*, 625 F.2d 499, which conclusively holds that a more tangible interest need not be an employment interest or even a property interest, but could be a right secured by the bill of rights—in that case unlawful arrests and a search and seizure. *Id. Marrero* further made clear that there need not be direct causation, but rather only a connection between the statement and the plus-factor that would exist in the public mind. *Id.* at 518.

There is no question that swearing to false facts or omitting material facts to secure an arrest without probable cause violates the constitution. *See Jones*, 174 F.3d at 1285. Plaintiffs see no reason why this would be different in cases where there is civil unrest. *See Coolidge*, 403 U.S. at 454 ("In times of civil "unrest, whether caused by crime or racial conflict or fear . . . the values served by the Fourth Amendment rights are more, not less, important.").

## **<u>CONCLUSION</u>**

For the foregoing reasons, Plaintiffs respectfully request this Court deny Defendant Howard's, Motion to Dismiss or that if the Court grants such motion it grant the motion with leave to amend.

Respectfully submitted this 14th day of October, 2022.

By:
*<u>/s/Lance J. LoRusso</u>*
Lance J. LoRusso
Georgia Bar No. 458023


*<u>/s/ Ken Davis</u>*
Ken Davis
Georgia Bar No. 705045
*Counsels for Plaintiffs*

LoRusso Law Firm, P.C.
1827 Powers Ferry Road, S.E.
Atlanta, Georgia 30339
P: 770-644-2738 | F: 770-644-2379
lance@lorussolawfirm.com
ken@lorussolawfirm.com

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| DEVIN BROSNAN,<br><br>                    Plaintiff,<br><br>v.<br><br>KEISHA LANCE BOTTOMS, *et al.*<br><br>                    Defendants, | No.: 1:22-cv-02337-LMM |

## CERTIFICATE OF COMPLIANCE

I certify that the documents to which this certificate is attached have been prepared with one of the font and point selections approved by the Court in LR 5.1B for documents prepared by computer.

/s/Lance J. LoRusso
Lance J. LoRusso, Esq.
Georgia Bar No. 458023
LoRusso Law Firm, P.C.
*Attorney for Plaintiffs*

s/ Ken Davis
Ken Davis
Georgia Bar No. 705045
LoRusso Law Firm P.C.
*Attorney for Plaintiffs*

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

DEVIN BROSNAN,

          Plaintiff,

v.

KEISHA LANCE BOTTOMS, *et al.*

          Defendants,

No.: 1:22-cv-02337-LMM

## CERTIFICATE OF SERVICE

I certify that I electronically filed the within and foregoing with the Clerk of Court using the CM/ECF system.

Respectfully submitted this 14th day of October, 2022.

*/s/ Lance J. LoRusso*
Lance J. LoRusso, Esq
Georgia Bar No. 458023
Attorney for Plaintiffs

*/s/ Ken Davis*
Ken Davis, Esq.
Georgia Bar No. 705045
Attorney for Plaintiffs