UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

DEVIN BROSNAN,

　　　　　　　Plaintiffs,

v.

KEISHA LANCE BOTTOMS, *et al.*

　　　　　　　Defendants,

No.: 1:22-cv-02337-LMM

## PLAINTIFFS' MOTION FOR LEAVE TO FILE A FIRST AMENDED COMPLAINT AND BRIEF IN SUPPORT OF THE SAME

COMES NOW, Plaintiff Devin Brosnan, who by and through undersigned counsel, and pursuant to Federal Rules of Civil Procedure, rule 15(a)(2) hereby moves this Court for leave to file a first amended Complaint.

## INTRODUCTION, FACTS,[1] AND PROCEDURAL HISTORY

Plaintiff filed his original complaint on June 10, 2022. At the time there remained an open investigation of Peter Skandalakis. Until Special Prosecutor Skandalakis announced that Plaintiff had "committed no criminal offense and his

---

[1] Plaintiffs provide a brief statement of facts, but otherwise assume the Court and all parties are amply familiar with the facts and history of this case.

actions were objectively reasonable" and announced he would not be presenting the matter to a grand jury for indictment, it was impossible to plead this. Plaintiff has added facts relating to this positive outcome and the fact that no prosecution was initiated against him, having decided to dismiss the case prior to presentment to a grand jury. Additionally, after the dismissal of the case, it became apparent that Plaintiff's personal cellphone, seized by Defendants Rucker, Howard, and Hannah, would not be returned and had been irretrievably lost.

Further, given the necessity of amending to add these new, previously-unknown, highly relevant facts, Plaintiff has significantly shortened and rearranged the facts pleaded to make more clear facts which speak to the inapplicability of various immunities, while these facts are not substantively or materially different, their arrangement and form makes much more clear their relevance as it relates to various legal doctrines and caselaw which are particular to the claims brought.

Plaintiff pleaded multiple claims against various Defendants alleging, *inter alia*, that his rights had been violated under color of law. *See generally* ECF No. 1. Plaintiff was employed by the City of Atlanta Police Department (APD) and was involved in an incident where a suspect violently resisted arrest and after assaulting Plaintiff and stealing Plaintiff's City-issued TASER by force. ECF No. 1 at ¶¶ 33-35. After committing multiple felonies, being placed under arrest, and seriously injuring Plaintiff, the suspect began to flee and turned towards Officer Rolfe, not a party to

this action, extending his arm towards Rolfe while holding an object. *Id.* at ¶ 41. Officer Rolfe was in fear for his safety, the safety of those around them, and Plaintiff; this being the case Officer Rolfe utilized force and fired his service weapon to subdue the suspect. *Id.* at ¶¶ 42, 43.

This incident was in compliance with Atlanta Police Department ("APD") policy and was neither criminal nor unreasonable—all of these facts would have been clear to an objective reasonable observer of readily available evidence. *Id.* In spite of this, Defendants Howard and Bottoms began to widely publicize the incident to further their political ambitions. In furtherance of this aim, Defendant's Bottoms and Howard made stigmatizing statements, imputing criminal conduct to both Plaintiff and Officer Rolfe. Such statements not only falsely implicated Plaintiff in criminality, but also put Plaintiff's life in immediate danger. *See generally id.* at ¶¶ 132-38. Further, these statements were made either with direct knowledge of their falsity or with reckless disregard of evidence readily available to both Howard and Bottoms. *Id.*

These stigmatizing statements were intimately related to other losses which implicated liberty and property interests. *See id.* at 148-50; *see also id.* at 125-75. To wit, Plaintiff's property interest in his apartment and personal possessions were significantly interfered with—by rioters driven to a frenzy by Bottoms' and Howard's statements—and he was arrested based on an affidavit that contained knowing

misstatements and omissions of fact; these omissions and misrepresentations were material and vitiated probable cause. *Ibid.* Additionally, Plaintiff was deprived of both his chosen home and his ability to live in a particular location in which he had chosen to establish his life. *Ibid.*

Plaintiff was afforded no pre-deprivation hearing and no notice prior to the publication of these statements. *See generally id.* Further, these statements were made by final policymakers, *i.e.*, they were made pursuant to official policy. *See* ECF No. 67 at pp. 14-16 (discussing importance of *Monell* liability and its effect on post-deprivation due process); *See also* ECF No. 1 at ¶¶ 201, 228.  Plaintiff was afforded no adequate name-clearing hearing and his reputation remains irreparably damaged. ECF No. 1 at ¶¶ 201, 228.

Further, Plaintiff's arrest was secured by Defendant Howard and those whom he supervised acting as first-instance probable cause investigators. *See generally* ECF No. ¶ 68 (discussing at length function and its effect on immunity). In essence, Howard had created a policy of placing staff in the position of traditional police investigators who take part in investigation in order to establish probable cause to affect arrest. *Ibid.* These staff members—including Defendant Rucker and Hannah—were County employees who had been provided to Howard by the County and whom Howard supervised and trained as a County actor. *See, e.g.*, ECF No. 1 at ¶¶ 16, 18, 157-59, 200-04. In essence, Howard had created a quasi-police force utilizing County

employees who undertook investigations to further a campaign narrative which Howard found personally advantageous. *Ibid.* Due to this belief, Howard widely published this practice and County actors were aware of Howard's actions vis-à-vis utilizing county employees to conduct grossly inadequate police-style investigations. *See, e.g.*, *id.* at ¶¶ 107-08.

While there exist a multitude of actions, largely this boils down to Defendant Howard and Bottoms[2] utilizing resources, responsibility, and trust provided to them by the County and City to sacrifice an innocent police officer at a time when police officers were subject to violent public outrage. This was done with no regard to either Plaintiff's rights or the very real danger in which his life was placed.

Because of the nature of the time and their political positions, Bottoms and Howard widely publicized both their actions and their acts against Plaintiff. *Id.* at ¶¶ 57-118. Instead of condemning the actions of Howard or Bottoms, County and City actors expressed apparent approval. *See, e.g.*, *id.* at ¶¶ 205-06.

Eventually, an actual investigation took place by a special prosecutor appointed after Howard's successor recused herself from Plaintiff's case and the case was dismissed without presenting the matter to a grand jury.

---

[2] *Monell* liability attaches to municipal defendants due to the status of Howard and Bottoms, and the actions of Rucker and Hannah seem largely to have been at the behest or direction of Howard.

When Plaintiff filed his original Complaint, it remained unclear whether certain causes of action would be viable and no outcome existed vis-à-vis the Special Prosecutor's decision on whether to prosecute the case.

While the Proposed First Amended Complaint ("PFAC") does not specifically address issues presented in Defendants' Motions to Dismiss, it does highlight certain factual bases underlying legal theories. For instance, Plaintiff pleaded that Rucker and Hannah were County employees—it appears as if the Defendants believed this a conclusory allegation which could be demonstrated erroneous as a matter of law— the Plaintiff has made clear that the County has the legal ability to provide employees to the District Attorney's office and that such employees would be paid and employed by the County, yet put under the supervision of the then-current district attorney. Likewise, Plaintiff pleaded in this role, Howard was acting in a county capacity, *i.e.*, he was given County employees, paid by the County, with virtually no oversight, who he could manage, and supervise. In this role, Defendant Howard decided to utilize these County employees to undertake conclusively non-prosecutorial acts.

Again, Plaintiff originally pleaded that Howard, Rucker, and Hannah, were all acting in non-prosecutorial role. This is certainly true, but was not made pellucidly clear. Plaintiff's PFAC now makes clear that what Howard and his employees were doing was undertaking an investigation no different than that traditionally done by police officers, that was aimed solely at affecting arrest, and establishing probable

cause. It is this first-instance nature aimed at establishing probable cause which differentiates a police-style investigation from a prosecutorial investigation, where there already has been established probable cause and a prosecutor examines a case to determine its legal merits and fitness for presentation to a grand jury. Plaintiff's PFAC makes this abundantly clear.

The same remains true throughout the PFAC; in essence, it has shortened, reorganized, and clarified factual matters which undergirded simpler assertions which Defendants appear to have either misconstrued or believed mistakenly were impossible as a matter of law.

Plaintiffs' PFAC addresses most significantly issues of clarity which may have existed given the complexity of the case and greatly reduces stylistic shortcomings which may have led to misinterpretation. While Plaintiff is aware that there exist multiple motions to dismiss pending, *see, e.g.*, ECF Nos. 22, 33, 35, 44, 46, Plaintiff strongly believe that their Proposed First Amended Complaint will present minimal prejudice to all involved and simplify both issues and motion practice moving forward. Further, and of note, much of the argumentation around motions to dismiss simply involve the legal possibility of certain facts asserted: Plaintiff asserted that Howard was acting in a non-prosecutorial role in undertaking a first-instance investigation and making statements to the media; Plaintiff continues to make this self-same assertion, but has organized the complaint in a manner to make

this more apparent. Should the Defendants' argument be correct, that in undertaking such an investigation the Defendant cannot, as a legal possibility, be acting in a non-prosecutorial role, then they can submit the same argument, backed by the same caselaw, and *no* assertion of fact by the Plaintiff will be able to defeat such—whether it be Plaintiff's original complaint where these facts are spread throughout, or Plaintiff's PFAC which groups such facts to make more apparent their import. The same is true of the County-State distinction on which multiple Defendants rely; the same is true of the assertion that statements could not be interpreted as defamatory; the same is true that certain Defendants could not act in a final-policy-making position; the same is also true of the availability of post-deprivation hearings and the applicability of *Parratt Hudson*. Indeed, Plaintiff can almost list every argument *ad seriatim* which has been made and demonstrate that the same argument, had it merit, should apply.

What has occurred here is that Plaintiff has better arranged his facts to demonstrate why initially these arguments should not have been accepted and why they cannot be accepted in subsequent iterations. While Plaintiff does not expect the PFAC to be vulnerable to further motions to dismiss, it will be significantly simpler for all parties to deal with a more concise and clear complaint that makes obvious why complex legal tests should apply to the matter in a certain manner by rearranging facts to match those tests rather than a strict chronological narrative.

## ARGUMENT

### I.  Leave to Amend Should Be Granted Absent a Demonstration of Good Cause.

Leave to amend should be freely given. Fed. R. Civ. P. 15. *Foman v. Davis*, 371 U.S. 178, 182 (1962) (holding absent undue prejudice, delay, bad faith, or "*repeated failure to cure pleading deficiencies by amendments previously allowed*[,]" leave is to be granted). Although, the Court exercises discretion in deciding to grant leave to amend, such discretion is not absolute. *See Dussouy v. Gulf Coast Investment Corp.*, 660 F.2d 594, 597 (5th Cir. 1981).

> "Discretion" may be a misleading term, for rule 15(a) severely restricts the judge's freedom, directing that leave to amend 'shall be freely given when justice so requires.' It evinces a bias in favor of granting leave to amend. The policy of the federal rules is to permit liberal amendment to facilitate determination of claims on the merits and to prevent litigation from becoming a technical exercise in the fine points of pleading.

> *Id.* at 597-98.

"[U]nless there is a *substantial* reason to deny leave to amend, the discretion of the district court is not broad enough to permit denial." *Id.* at 598 (emphasis added). The 11th Circuit has specifically noted that *Dussouy* is binding precedent in this circuit. *Bank v. Pitt*, 928 F.2d 1108,1112, fn 4. (11th Cir. 1991) ("We treat *Dussouy* as binding...") (overruled for other reasons in *Wagner v. Deawoo Heavy Indus. America Corp*, 314 F.3d 541, 542 (11th Cir. 2002)). "Ordinarily, if the underlying

facts or circumstances relied upon by a plaintiff may be a proper subject of relief, leave to amend should be freely given.*" Hall v. United Ins. Co. of America*, 367 F.3d 1255, 1262 (11th Cir.2004); *Warner v. Alexander Grant & Co.,* 828 F.2d 1528, 1531 (11th Cir.1987) (holding that it was error for the district court to dismiss with prejudice without granting leave to amend because "[t]he district court's order contravened the well[-]established policy in the federal courts favoring liberal pleading requirements"); *Lone Star Motor v. Citroen Cars*, 288 F.2d 69, 75 (5th Cir. 1961) ("F.R.Civ.P. 15 declares an affirmative policy in emphatic terms."). Accordingly, "District Courts have only limited discretion to deny a party leave to amend the pleadings. [T]he court is constrained to allow a plaintiff leave to amend unless there is substantial countervailing reason." *Grayson v. K-Mart*, 79 F.3d 1086 (11th Cir. 1996). No such justification for denying the proposed amendment exists in this case.

## II.    Plaintiffs' Seek Leave to Amend in Good Faith, Has Never Amended, and Seeks Amendment to Clarify Pleading Ambiguities.

Leave to file and enter an amended pleading is to be granted where the amendment is not futile. *See, e.g.*, *Chang v. JPMorgan Chase Bank, N.A.*, 845 F.3d 1087, 1091, 1098 (11th Cir. 2017) (holding district court abused discretion in denying a complaint where complaint stated claim, *i.e.*, had merit).

Plaintiff believes, here, prejudice, if existent at all, will be minimal. Plaintiff

recognizes that his claims are factually intensive and complaint lengthy. The proposed PFAC is both shorter and easier to handle because of organization focused on complex legal issues rather than narrative flow. For instance, the PFAC now makes painfully clear why Plaintiff believes certain actors are county actors and why certain actions do not represent traditionally prosecutorial acts. *Compare* Ex. A (draft of Plaintiff's PFAC), *with* ECF Doc. No. 1 (current operative complaint). Moreover, the PFAC has been pared down to focus on areas which appeared to be vulnerable to misunderstanding: it is limited to a short factual narrative in chronological order, facts which address pleading particularities required to overcome certain immunities or demonstrate that they are not applicable. While this is in fact stylistic, it will likely save all involved, and the Court, significant time.

Next, to the extent which the PFAC may moot motions to dismiss, the factual and legal bases for immunities or lack thereof, remain virtually unchanged: *e.g.*, Plaintiff has, and yet again would, argue that Defendant Howard was acting in an investigatory capacity no different than that of an executive law enforcement official, seeking to establish probable cause and secure an arrest warrant, *see* ECF Doc. No. 68 at 7, and that making statements to the press is non-prosecutorial. *Ibid*. Should Defendant Howard still wish to assert that functionally this was prosecutorial,[3] he can

---

[3] Plaintiff does not believe the PFAC would be subject to additional motions to dismiss, in the sense that Plaintiffs do not believe there is an argument which

do so utilizing identical caselaw and virtually identical arguments—he also would enjoy the benefit of knowing the Plaintiff will stress the requirement of a functional analysis. The same is true of each additional defendant, *e.g.*, Defendants Bottoms has argued she enjoys qualified immunity because the law was not clearly established at the time of their violation; if this is the case—Plaintiff does not believe it to be so— then a motion to dismiss can be resubmitted absent modification or amendment. Plaintiff cannot change whether or not there existed clearly established law by amendment.

### III.   Plaintiff's Amendment Has Merit.

The majority of Plaintiff's amendment involves clarification of facts that were previously pleaded in a more ambiguous form or alternatively buried in a surfeit of facts. While the Court is familiar with both arguments and counter-arguments made in motion practice, Plaintiff would highlight prosecutorial immunity to demonstrate the nature of his amendment as it relates to reorganization.

Defendant Howard conflated the first-instance investigation seeking probable cause with a more traditional prosecutorial investigation and evaluation taking place

---

demonstrates as a matter of law that the claims must fail. The point is primarily, that if one believes that truly these acts were prosecutorial in nature the same exact argument would apply. This is true of qualified immunity and further true of county/state employment status, official immunity, *etc.*

after probable cause has been established by law enforcement, *see* ECF Doc. No. 45; Plaintiff argued that clearly this was a first-instance probable cause investigation, *i.e.*, non-prosecutorial investigation, but this took pages of argument and required citations to multiple pages and paragraphs distributed throughout the Complaint. *See* ECF Doc. No. 68. Plaintiff has clarified, factually, what may have been interpreted as a dubious or conclusory allegation, *i.e.*, that the investigation was non-prosecutorial, and rearranged supporting facts to appear in rapid succession Ex. A at ¶¶ 15-16, 51-53. While changes of this sort may seem inconsequential, they eliminate the need for lengthy argumentation and the need read a complaint multiple times to locate facts arranged in a different manner.

Finally, Plaintiffs have proactively removed a ratification claim against Defendant Bottoms which Plaintiff believes may have lacked merit or otherwise confused the Complaint, which undoubtedly benefit all involved.

## **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests this Court grant Plaintiff's request to file a first amended complaint and grant all other relief the court finds just and proper.

Respectfully submitted this 18th day of November, 2022.

{Signature on the following page}

By:

*/s/Lance J. LoRusso*
Lance J. LoRusso
Georgia Bar No. 458023

*/s/ Ken Davis*
Ken Davis
Georgia Bar No. 705045
*Counsels for Plaintiffs*

LoRusso Law Firm, P.C.
1827 Powers Ferry Road, S.E.
Atlanta, Georgia 30339
P: 770-644-2738 | F: 770-644-2379
lance@lorussolawfirm.com
ken@lorussolawfirm.com

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

DEVIN BROSNAN,

                Plaintiffs,

v.

KEISHA LANCE BOTTOMS, *et al.*

                Defendants,

No.: 1:22-cv-02337-LMM

## CERTIFICATE OF COMPLIANCE

I certify that the documents to which this certificate is attached have been prepared with one of the font and point selections approved by the Court in LR 5.1B for documents prepared by computer.

*/s/Lance J. LoRusso*
Lance J. LoRusso, Esq.
Georgia Bar No. 458023
LoRusso Law Firm, P.C.
*Attorney for Plaintiffs*

*/s/ Ken Davis*
Ken Davis
Georgia Bar No. 705045
LoRusso Law Firm P.C.
*Attorney for Plaintiffs*

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

DEVIN BROSNAN,

            Plaintiffs,

v.

KEISHA LANCE BOTTOMS, *et al.*

            Defendants,

No.: 1:22-cv-02337-LMM

## CERTIFICATE OF SERVICE

I certify that I electronically filed the within and foregoing with the Clerk of Court using the CM/ECF system.

Respectfully submitted this 18th day of November, 2022.

*/s/ Lance J. LoRusso*
Lance J. LoRusso, Esq
Georgia Bar No. 458023
Attorney for Plaintiffs

*/s/ Ken Davis*
Ken Davis, Esq.
Georgia Bar No. 705045
Attorney for Plaintiffs